URE LAW FIRM
8280 Florence Avenue, Suite 200
Downey, CA 90240
Telephone: (213) 202-6070
Facsimile: (213) 202-6075
Thomas B. Ure – State Bar No. 170492
tom@urelawfirm.com

Proposed attorney for
Debtor and Debtor in Possession

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>RMA CA INC.,<br><br>     Debtor and Debtor-in-<br>     Possession. | ) Case No.: 2:26-bk-13916-VZ<br>)<br>) Chapter 11 (SubV)<br>)<br>) DEBTOR'S EMERGENCY MOTION<br>) FOR ENTRY OF AN INTERIM<br>) ORDER: (I) AUTHORIZING THE<br>) DEBTOR TO UTILIZE CASH<br>) COLLATERAL PURSUANT TO 11<br>) U.S.C. §§ 361, 362, 363; (II)<br>) GRANTING ADEQUATE<br>) PROTECTION PURSUANT TO 11<br>) U.S.C. §§ 361, 362, 363; (III)<br>) SCHEDULING A FINAL HEARING<br>) PURSUANT TO BANKRUPTCY<br>) RULES 4001(b); AND (IV)<br>) GRANTING RELATED RELIEF;<br>) MEMORANDUM OF POINTS AND<br>) AUTHORITIES IN SUPPORT<br>) THEREOF<br>)<br>) OMNIBUS DECLARATION OF RAYAN<br>) AYDINIAN IN SUPPORT THEREOF<br>)<br>) DATE;      TBD<br>) TIME:      TBD<br>) CTRM:      1368<br>) PLACE:     255 E. Temple Street<br>)                    Los Angeles, CA 90012<br>) |

-1-

Pursuant to Local Bankruptcy Rule 2081-1, Federal Rule of Bankruptcy Procedure 4001(b), and 11 U.S.C. §§ 105(a), 361, 362, and 363, RMA CA INC., ("RMA" or the "Debtor"), the debtor and debtor-in-possession in the above-captioned chapter 11 bankruptcy case, files this motion (the "Motion"), on an emergency basis, for the entry of an interim order ("Interim Order") in substantially the form attached hereto as Exhibit "1", and for the entry of a final order ("Final Order") following a final hearing on the Motion, which provides for, among other things:

(1) authorization for the Debtor to use cash collateral, as such term is defined in 11 U.S.C. § 363(a), in accordance with the Debtor's weekly cash flow forecast setting forth all projected post-petition cash receipts and cash disbursements through July 26, 2026 (the "Initial Cash Collateral Budget"), a true and correct copy of which is attached as Exhibit "B" to the Omnibus Declaration of Rayan Aydinian (the "Aydinian Declaration") filed concurrently herewith, and all future budgets, pursuant to the terms of the Interim Order to be followed by the Final Order;

(2) pursuant to 11 U.S.C. § 507(b), the grant of super-priority administrative expense priority claims against the Debtor's estate ("Super-Priority Claims") to the Debtor's secured lenders (the "Lenders") on account of any post-petition diminution in the value of the Lenders' collateral (if any) on account of or resulting from the Debtor's use of their cash collateral, pursuant to the terms of the Interim Order to be followed by the Final Order, with any such Super-Priority Claims

to have priority over any and all administrative expenses and claims asserted against the Debtor or its respective bankruptcy estate;

(3) the grant of adequate protection to the Lenders on account of the Debtor's use of their cash collateral as defined in 11 U.S.C. § 363(a), which adequate protection shall be in the form of valid, enforceable, non-avoidable and fully perfected replacement liens on, and security interests in, all assets of the Debtor's estate that secured the valid, enforceable, non-avoidable and fully perfected liens of the Lenders as of the Debtor's petition date and all post-petition proceeds obtained by the Debtor from such pre-petition collateral of the Lenders (the "Adequate Protection Liens"); with such Adequate Protection Liens to have the same validity, scope and priority as the pre-petition liens of the Lenders;

(4) the scheduling of a final hearing (the "Final Hearing") or a further interim hearing ("Interim Hearing") on the Motion on a date and time that is convenient for the Court; and

(5) waiver of any applicable stay and provision for the immediate effectiveness of the Interim Order upon its entry by the Court.

## **BACKGROUND INFORMATION**

RMA CA INC., ("RMA" or "Debtor"), the debtor and debtor-in-possession in the above-captioned Chapter 11 bankruptcy case filed on April 22, 2026 (the "Petition Date"). The Debtor continues to operate its business, manage its financial affairs, and operate its bankruptcy estate as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

RMA CA INC. began operations in 2019 as an online seller of prepackaged food products, primarily through Amazon. The business focused on including sourcing, packaging, labeling and fulfillment via Amazon Warehouse under the brand America Best Food.

As of the Petition Date, the Debtor had approximately 3 full-time employees and 3 part-time employees.  None of the Debtor's employees are represented by a labor union; they are employed directly through the Debtor.

Debtor's financial circumstances leading to the need to file the bankruptcy petition was caused by four major events:

    a. Significant loss of sale due to competition in the online food market;

    b. Accumulation of business debt, including merchant cash advances and loans;

    c. One employment-related lawsuit filed by a former contractor;

    d. Cash flow restrictions due to creditor claims (UCC liens affecting Amazon disbursement account).

Attached hereto as Exhibit "A" is a schedule of the Debtor's Loans as well as a UCC Search which I believe to be accurate.

Since obtaining the Merchant Cash Advance Loans, the Debtor diligently explored alternative financing and funding solutions. However, due changes in the capital markets, and the general economic conditions affecting the Debtor's market segment, Debtor was unable to obtain any new financing.

Although the Debtor had done everything possible to reduce operating expenses over the last months, such reduction in expenses has not resulted in sufficient savings to preserve the Debtor's ability to timely pay its obligations. As a result of the Debtor's inability to obtain new financing and materially reduce operating and other expenses, Debtor ultimately decided to commence this bankruptcy case.

**REQUEST TO USE CASH COLLATERAL**

To avoid immediate and irreparable harm to the Debtor, the Lenders, Debtor's employees, Debtor's other creditors and its bankruptcy estate, Debtor must be able to use cash collateral to pay the expenses set forth in the Initial Cash Collateral Budget. Debtor anticipates that this chapter 11 bankruptcy case and cash collateral process will be consensual with the Lenders. In the meantime, Debtor must be authorized to use cash collateral on an emergency interim basis to pay the expenses in the Initial Cash Collateral Budget pending a further Interim Hearing and/or the Final Hearing.

The Debtor has four active recorded Liens. Debtor has ongoing income from sales which may be subject to some or all of the Liens.

The proposed Initial Cash Collateral Budget is very limited and covers only the Debtor's immediate cash needs that must be addressed for the Debtor to avoid immediate and irreparable harm during the interim period. The Debtor anticipates that it will likely be able to file an updated cash collateral budget and a supplement to the Motion after the initial hearing and prior to any scheduled final hearing. The Debtor therefore requests that

in addition to approving the Debtor's use of cash collateral on an emergency interim basis to enable the Debtor to pay the expenses in the Initial Cash Collateral budget, the Court set a further Interim Hearing or Final Hearing in approximately ten weeks.

The Debtor seeks Court authority to deviate from the Initial Cash Collateral Budget, without the need for any further Court order, up to 20% per line item (and in the aggregate) in the Initial Cash Collateral Budget at any time on a rolling aggregate basis, and to permit any unused amounts for any given week to carry over to the following week's expenditures or beyond (the "Permitted Variance"). The Debtor anticipates that as this chapter 11 bankruptcy case progresses and the Debtor can negotiate with the Lenders, future budgets will become more precise and the need for Permitted Variances may decrease. At this early stage of this chapter 11 bankruptcy case, the Debtor is requesting some degree of flexibility to minimize the need for the Debtor to have to come back before the Court before the next Interim Hearing or Final Hearing, both to avoid imposing upon the Court and incurring the expense of having to do so.

The Debtor is requesting entry of the Interim Order pursuant to Bankruptcy Rules 4001(b) and 4001(c) and the Local Bankruptcy Rules. Absent granting the relief sought by this Motion, the Debtor, its Lenders, its other creditors, and its estate will be immediately and irreparably harmed. The immediate entry of the Interim Order is therefore in the best interests of the Debtor's estate.

In order to provide the maximum notice of this Motion possible under the circumstances, concurrently with the filing of this Motion with the Court, the Debtor served a copy of this Motion and all supportive papers upon the Office of the United States Trustee, the parties with recorded Liens and all other known secured creditors and their counsel (if any), the 20 largest unsecured creditors, the SubV Trustee and any parties requesting special notice.

**WHEREFORE,** the Debtor respectfully requests that this Court:

(1) grant the relief requested in this Motion on an emergency interim basis;

(2) enter the proposed form of the Interim Order attached hereto as Exhibit "1";

(3) waive any applicable stay to allow the Interim Order to become effective immediately upon its entry;

(4) authorize the Debtor to use cash collateral to enable the Debtor to pay for the expenses set forth in the Initial Cash Collateral Budget subject to the Permitted Variance in accordance with the terms set forth in the Interim Order;

(5) grant to the Lenders the Super-Priority Claims described above;

(6) grant to the Lenders the Adequate Protection Liens described above;

(7) schedule a continued Interim Hearing or Final Hearing on a date and time that is convenient for the Court; and

///

///

(8) grant such further relief as the Court deems just and proper.

April 29, 2026                         URE LAW FIRM, APC

                              By:  ___/s/ Thomas B. Ure
                                   Thomas B. Ure
                                   Proposed Counsel for Debtor

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I. STATEMENT OF FACTS**

   **a. Brief Description Of The Debtor And Its Business.**

RMA CA INC., ("RMA" or "Debtor"), the debtor and debtor-in-possession in the above-captioned Chapter 11 bankruptcy case filed on April 22, 2026 (the "Petition Date"). The Debtor continues to operate its business, manage its financial affairs, and operate its bankruptcy estate as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

RMA CA INC. began operations in 2019 as an online seller of prepackaged food products, primarily through Amazon. The business focused on including sourcing, packaging, labeling and fulfillment via Amazon Warehouse under the brand America Best Food.

As of the Petition Date, the Debtor had approximately 3 full-time employees and 3 part-time employees. None of the Debtor's employees are represented by a labor union; they are employed directly through the Debtor.

Debtor's financial circumstances leading to the need to file the bankruptcy petition was caused by four major events:

a.   Significant loss of sale due to competition in the online food market;

b.   Accumulation of business debt, including merchant cash advances and loans;

c.   One employment-related lawsuit filed by a former contractor;

d. Cash flow restrictions due to creditor claims (UCC liens affecting Amazon disbursement account).

Attached hereto as Exhibit "A" is a schedule of the Debtor's Loans as well as a UCC Search which I believe to be accurate.

Since obtaining the Merchant Cash Advance Loans, the Debtor diligently explored alternative financing and funding solutions. However, due changes in the capital markets, and the general economic conditions affecting the Debtor's market segment, Debtor was unable to obtain any new financing.

Although the Debtor had done everything possible to reduce operating expenses over the last months, such reduction in expenses has not resulted in sufficient savings to preserve the Debtor's ability to timely pay its obligations. As a result of the Debtor's inability to obtain new financing and materially reduce operating and other expenses, Debtor ultimately decided to commence this bankruptcy case.

**The Loans.**

The Debtor has four active recorded Liens. The Debtor has revenue from food sales that may be the subject of one or more of the recorded liens.

Attached as Exhibit "A" to the concurrently filed Aydinian Declaration is a schedule of the Liens and loans that are preliminarily known to Mr. Aydinian. Exhibit "A" includes the Lender's name, the lien date and the estimated balance due where available. Exhibit "A" is based on the information that is available at this time and is subject to verification and modification after Debtor's attorney has conducted an evaluation

and analysis of the Liens and/or Loans.  Exhibit "A" is not an admission as to the accuracy or completeness of the information contained therein as the information and data contained in Exhibit "A" will be supplemented and modified as additional information and data becomes known.

Included in Exhibit "A" to Aydinian Declaration is also a current UCC Search Report (the "UCC Report") conducted by CLAS at the direction of Debtor's counsel, which provides a search in the State of California (which is the Debtor's state of principal place of business) of the UCC-1, Federal Tax Liens, State Liens and Judgments indices.  The UCC Report shows that the U.S. Small Business Administration filed a UCC-1 Financing Statements that, subject to further review, analysis and verification, appears to be active and has not lapsed.  The only other active liens were three separate liens recorded by North Star Leasing, A Division of Peoples Bank, Parafin Inc./Parafin SPV 2, LLC, and Uncapped US LLC.  To the extent the Debtor granted any other party any security interests and liens, such liens and secured interests would be unperfected, resulting in any such lenders being unsecured creditors of the Debtor.

**b. The Debtor's Immediate Need For Interim Use Of Cash Collateral.**

As explained above, the Debtor has an immediate need for access to some of its funds ("cash collateral") to avoid immediate and irreparable harm pending a final hearing on this Motion.  It appears that the Debtor's cash may constitute the cash collateral of some of the Lenders pursuant to 11 U.S.C. § 363(a).  Given the emergency nature of the Debtor's bankruptcy

filing, the Debtor has not had the ability to obtain the Lenders' consent to the Debtor's use of cash collateral in accordance with the terms of the proposed Interim Order. However, the Debtor still requires the immediate use of cash collateral to fund the expenses set forth in the Initial Cash Collateral Budget, which the Debtor submits serves the best interests of the Debtor, the estate, the Lenders, the Debtor's other creditors, and adequately protects the Lenders' interest, if any, in the Debtor's cash collateral. The Initial Cash Collateral Budget is extremely limited so that the Debtor pays only those that are necessary to avoid the immediate and irreparable harm to the Debtor pending further evaluation of the Loans and the Debtor's financial needs by the Debtor's professional.

The Debtor anticipates that it will likely be able to file an updated cash collateral budget and a supplement to the Motion after the Debtor's attorney performs an initial analysis and evaluation of the Loans. The Debtor therefore requests that in addition to approving the Debtor's use of cash collateral on an emergency interim basis to enable the Debtor to pay the expenses in the Initial Cash Collateral budget, the Court set a further Interim Hearing or Final Hearing in approximately ten weeks.

**II.   THE DEBTOR SHOULD BE AUTHORIZED TO USE CASH COLLATERAL**

      **a. The Debtor Must Be Authorized To Use Cash Collateral To Operate, Maintain And Preserve Its Assets To Pay The Expenses Set Forth In The Initial Cash Collateral Budget.**

The Debtor's use of property of the estate is governed by section 363 of the Bankruptcy Code. Section 363(c)(1) provides in pertinent part:

If the business of the debtor is authorized to be operated under section. . .1108. . . of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1). A debtor in possession has all the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with section 363. 11 U.S.C. § 1107(a).

"Cash collateral" is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and an entity other than the estate have an interest [.]" 11 U.S.C. § 363(a). Section 363(c)(2) establishes a special requirement with respect to "cash collateral," providing that the trustee or debtor in possession may use "cash collateral" under subsection (c)(1) if:

(A) each entity that has an interest in such cash collateral consents; or
(B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section.

11 U.S.C. §363(c)(2)(A) and (B).

It is appropriate for a chapter 11 debtor to use cash collateral for the purpose of maintaining and operating its property. 11 U.S.C. § 363(c)(2)(B); *In re Oak Glen R*Case *Vee*, 8 B.R. 213, 216 (Bankr. C.D. Cal. 1981); *In re Tucson Industrial Partners*, 129 B.R. 614 (9th Cir. BAP 1991). Where the debtor is

-13-

operating a business, it is extremely important that the access to cash collateral be allowed in order to facilitate the goal of reorganization: "the purpose of Chapter 11 is to rehabilitate Debtor and generally access to cash collateral is necessary to operate a business." *In re Dynaco Corporation*, 162 B.R. 389 (Bankr. D.N.H. 1993), *quoting In re Stein*, 19 B.R. 458, 459. (Bankr. E.D. Pa. 1982).

The Debtor has no ability to maximize the value of its business and assets and the servicing of the Debtor's Loans unless the Debtor has immediate access to its cash collateral to use to pay the expenses set forth in the Initial Cash Collateral Budget. The Debtor's inability to pay such expenses would cause immediate and irreparable harm to the Debtor, its bankruptcy estate, its Lenders and other creditors. The Debtor's inability to pay the expenses set forth in the Initial Cash Collateral Budget, which include payroll, utilities, and other critical operating expenses, would result in the immediate shutdown of the Debtor's business. The preservation and maintenance of the value of the Debtor's business and assets, including the Lenders' collateral are of the utmost significance to maximize the recovery for creditors in this bankruptcy case, which as stated, is the primary goal of this bankruptcy case.

**b. The Debtor's Secured Creditors Are Adequately Protected By The Debtor's Post- Petition Use Of Cash Collateral.**

Pursuant to section 363(c)(2) of the Bankruptcy Code, the Court may authorize a debtor in possession to use a secured creditor's cash collateral if the secured creditor consents to

the use of cash collateral or is adequately protected. *In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984). *See also In re O'Connor*, 808 F.2d 1393, 1398 (10th Cir. 1987); *In re McCombs Properties VI, Ltd.*, 88 B.R. 261, 265 (Bankr. C.D. Cal. 1988).

Given the emergency nature of the filing of the bankruptcy case, the Debtor has not had the time to seek or to obtain consent from the Lenders to the Debtor's use of cash collateral to pay the expenses set forth in the Initial Cash Collateral Budget subject to the Permitted Variance. However, time is of the utmost essence with respect to the Debtor's immediate and urgent need to use cash collateral on an emergency interim basis pending a final hearing to avoid immediate and irreparable harm to the Debtor, its estate, Lenders, and other creditors. Given the limited amount of time until the Interim Hearing, it is not going to be practical for the Debtor to be able to obtain the consent to use cash collateral from all of the Lenders prior to the Interim Hearing. As a result, the Debtor requests the Court authorize the Debtor to use cash collateral to pay the expenses set forth in the Initial Cash Collateral Budget subject to the Permitted Variance. Any interest the Lenders have in the Debtor's cash collateral will be adequately protected by the Debtor's continued operation and maintenance of the Debtor's assets and business which will maximize the value of the Lenders' collateral and maximize the overall value of the Debtor's assets and business for all creditors. The Debtor's inability to use cash collateral would result in the immediate shut down and liquidation of the Debtor's business and assets,

which certainly is not in either the Lenders or the Debtor's best interests.

In *United Savings Association v. Timbers of Inwood Forest Associates*, 108 S.Ct. 626, 629 (1988) and subsequent case law, the property interest that a debtor must adequately protect pursuant to Sections 361(1) and (2) of the Bankruptcy Code is only the value of the lien that secures the creditor's claim. 108 S.Ct. at 630. *See also, McCombs,* 88 B.R. at 266. Section 506(a) "limit[s] the secured status of a creditor (i.e., the secured creditor's claim) to the lesser of the [allowed amount of the] claim or the value of the collateral." *McCombs*, 88 B.R. at 266.  The preservation of the value of a secured creditor's lien is sufficient to provide adequate protection to a secured creditor when a debtor seeks to use cash collateral. *In re Triplett*, 87 B.R. 25 (Bankr. W.D.Tex. 1988). *See also In re Stein*, 19 B.R. 458 (Bankr. E.D.Pa. 1982). The use of cash collateral was necessary to the continued operations of the debtor, and that the creditor's secured position could only be enhanced by the continued operation of the debtor's business. *Id.*  Where the court determined that the debtor's use of cash collateral for needed repairs, renovations and operating expenses eliminated the risk of diminution in the creditor's interest in the cash collateral and such use would more likely increase cash collateral. *McCombs* at 266.

The payment of expenses set forth in the Initial Cash Collateral Budget is necessary to enable the Debtor to avoid immediate and irreparable harm and that doing so will adequately protect the Lenders because it will enable the Debtor to

maximize the value of all of the Debtor's assets and the Lenders' collateral, and enable the Debtor to avoid an immediate shut down and liquidation. A debtor's continued business operations can constitute the adequate protection of a secured creditor. *See Matter of Pursuit Athletic Footwear, Inc.,* 193 B.R. 713 (Bankr. D. Del. 1996).

In determining adequate protection, courts stress the importance of promoting a debtor's reorganization. In *In re O'Connor*, *supra*, the Tenth Circuit stated:

> In this case, Debtor, in the midst of a Chapter 11 proceeding, have proposed to deal with cash collateral for the purpose of enhancing the prospects of reorganization. This quest is the ultimate goal of Chapter 11. Hence, the Debtor's efforts are not only to be encouraged, but also their efforts during the administration of the proceeding are to be measured in light of that quest. Because the ultimate benefit to be achieved by a successful reorganization inures to all the creditors of the estate, a fair opportunity must be given to the
> Debtor to achieve that end. Thus, while interests of the secured creditor whose property rights are of concern to the court, the interests of all other creditors also have bearing upon the question of whether use of cash collateral shall be permitted during the early stages of administration.

808 F.2d at 1937.

The Debtor's use of cash collateral to enable the Debtor to pay the expenses set forth in the Initial Cash Collateral Budget is the only way for the Debtor to maximize the value of the Debtor's assets, and the Lenders' collateral and avoid an immediate shut down and liquidation and the corresponding immediate and irreparable harm that it would cause the Debtor, its estate and its Lenders. The Debtor's use of cash collateral to enable the Debtor to pay the expenses set forth in the

Initial Cash Collateral Budget is all geared toward maximizing the overall recovery for the benefit of the creditors of this estate.

The Lenders are also adequately protected by the granting of the Super-Priority Claims and Adequate Protection Liens that the Debtor proposes to grant.

The Debtor asserts that it satisfied the requirements of section 363(c)(2) of the Bankruptcy Code to enable the Debtor to use cash collateral to pay the expenses set forth in the Initial Cash Collateral Budget subject to the Permitted Variance pending a final hearing.

**III. PROCEDURAL REQUIREMENTS REGARDING APPROVAL OF THIS MOTION**

Rule 4001(b) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") sets forth the procedural requirements for obtaining authority to use cash collateral. The Debtor asserts that it complied with these procedural requirements.

The Motion contains a copy of the proposed form of order granting the Motion attached as Exhibit "1" hereto.

The Motion provides a concise statement of the relief requested.

The Debtor served this Motion and all supportive papers upon the Office of the United States Trustee, all known or possible secured creditors and their counsel, the twenty largest unsecured creditors of each of the Debtor, the Office of the United States Trustee, the SubV and all parties who requested special notice via U.S. mail and expects additional notice regarding the hearing any deadlines to be set by the Court to be provided prior to any hearing on this Motion in accordance with

anticipates notice instructions issued by the Court. Accordingly, this Motion complies with the procedural requirements of Bankruptcy Rules 4001.

In compliance with Bankruptcy Rule 4001(b)(1)(B) and Local Bankruptcy Rule 4001-2, the Debtor filed concurrently herewith the mandatory Court-approved Form F4001-2 (Statement Regarding Cash Collateral Or Debtor In Possession Financing) which discloses whether the proposed Interim Order authorizing the Debtor's use of cash collateral on an interim basis, pending a final hearing, contains certain provisions or findings of fact. Accordingly, this Motion complies with the procedural requirements of Local Bankruptcy Rule 4001-2.

**IV.   THE WAIVER OF ANY APPLICABLE STAY IS APPROPRIATE**

The Debtor requests that any applicable stay be waived to allow the Interim Order to become immediately effective upon its entry by the Court because the failure to do so would cause the Debtor immediate and irreparable harm.

**V.   CONCLUSION**

Based upon all of the foregoing, the Debtor respectfully request that this Court:

(1) grant the relief requested in this Motion on an emergency interim basis at the currently scheduled Interim Hearing at the Court's convenience.;

(2) enter the proposed form of the Interim Order attached hereto as Exhibit "1";

(3) waive any applicable stay to allow the Interim Order to become immediately effective upon its entry by the Court;

(4) authorize the Debtor to use cash collateral to enable the Debtor to pay the expenses set forth in the Initial Cash Collateral Budget subject to the Permitted Variance in accordance with the terms set forth in the Interim Order;

(5) grant to the Lenders the Super-Priority Claims described above;

(6) grant to the Lenders the Adequate Protection Liens described above;

(7) schedule a further Interim Hearing on a date and time that is convenient for the Court; and

(8) grant such further relief as the Court deems just and proper.

DATED: April 29, 2026                     Ure Law Firm

                                    By    /s/ Thomas B. Ure
                                          Thomas B. Ure
                                          Proposed Attorney for Debtor
                                          and Debtor in Possession

# EXHIBIT "1"

URE LAW FIRM
8280 Florence Avenue, Suite 200
Downey, CA 90240
Telephone: (213) 202-6070
Facsimile: (213) 202-6075
Thomas B. Ure – State Bar No. 170492
tom@urelawfirm.com

Proposed attorney for
Debtor and Debtor in Possession

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>RMA CA INC.,<br><br>    Debtor and Debtor-in-<br>    Possession. | ) Case No.: 2:26-bk-13916-DS<br>)<br>) Chapter 11 (SubV)<br>)<br>) INTERIM ORDER: (I) AUTHORIZING<br>) THE DEBTOR TO UTILIZE CASH<br>) COLLATERAL PURSUANT TO 11<br>) U.S.C. §§ 361, 362,363; (II)<br>) GRANTING ADEQUATE PROTECTION<br>) PURSUANT TO 11 U.S.C. §§ 361,<br>) 362, 363; (III) SCHEDULING A<br>) CONTINUED OR FINAL HEARING; AND<br>) (IV) GRANTING RELATED RELIEF<br>)<br>) DATE;    TBD<br>) TIME:    TBD<br>) CTRM:    1639<br>) PLACE:    255 E. Temple Street<br>)              Los Angeles, CA 90012<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

A hearing was held at the above-reference date, time and location for the Court to consider approval of the emergency motion for use of Cash Collateral (the "Motion") filed as Docket Number __ by RMA CA INC., (the "Debtor"), the debtor and debtor-in-possession in chapter 11 bankruptcy case.  Appearances are noted on the Court record.

The Court, considered the Motion and all the pleadings filed by the Debtor in support of the Motion, all oppositions filed to the Motion (if any), the statements, arguments and representations of the parties made at the hearing on the Motion, and good cause appearing,

HEREBY FINDS AS FOLLOWS:

A. Except as otherwise provided herein, this Court has jurisdiction over the Debtor's case, the Motion, and the parties and property affected thereby pursuant to 28 U.S.C. §§ 157(b) and 1334.   Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B. Notice of the Motion, the relief requested therein and the interim hearing on the Motion was served by the Debtor on its twenty largest unsecured creditors, all known secured creditors, all Lenders, the United States Trustee for the Central District of California, the appointed SubV Trustee, and any parties who have requested special notice in this case (collectively, the "Service Parties").  Under the circumstances, the notice given by the Debtor of the Motion, the relief requested therein, and the interim hearing on the Motion

constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001(b).

C. The Debtor has an immediate need to use cash collateral to pay the expenses set forth in the Initial Interim Cash Collateral Budget attached hereto as Exhibit "B" (the "Initial Interim Cash Collateral Budget"). Payment of such expenses is necessary to enable the Debtor to avoid immediate and irreparable harm to the Debtor and its estate.

D. The Debtor requested immediate entry of this Initial Interim Order pursuant to Bankruptcy Rule 4001(b)(2). Absent granting the interim relief set forth in this Initial Interim Order, the Debtor's estate will be immediately and irreparably harmed.

E. Authorizing the Debtor to use cash collateral to pay the expenses set forth in the Initial Interim Cash Collateral Budget is in the best interest of the Debtor's estate.

F. Good cause has been shown for the entry of this Initial Interim Order.

Based upon the foregoing findings and conclusions, and upon the record made before this Court at the interim hearing, and good and sufficient cause appearing therefor,

THIS COURT HEREBY ORDERS, DETERMINES AND DECREES AS FOLLOWS:

1. The Motion is granted in its entirety on the terms and conditions set forth in this Initial Interim Order, with the foregoing findings incorporated herein by reference. This Initial Interim Order shall be valid and binding on all parties-in-interest and fully effective immediately upon its entry.

2. The Debtor is authorized to use cash collateral, as such term is defined in 11 U.S.C. § 363(a), to pay the expenses set forth in the Initial Cash Collateral Budget subject to the Permitted Variance.

3. The Lenders are granted Super-Priority Claims to the extent they are secured creditors (with valid and perfected liens on assets of this estate) on account of any post-petition diminution in the value of such Lenders' respective collateral with any such Super-Priority Claim to have priority over any and all administrative expenses and claims asserted against the Debtor or its bankruptcy estate.

4. The Lenders are granted the Adequate Protection Liens and all proceeds therefrom with such Adequate Protection Liens to have the same validity, priority and scope as their pre-petition liens.

5. A continued interim hearing on the Motion shall be held on _____ __, 2026 at ____:00 p.m. The Debtor shall provide notice of the continued interim hearing by regular U.S. Mail to all of the Service Parties by no later than _____, 2026 and file any supplement to the Motion by _____, 2026, including any further proposed cash collateral budget, and serve such supplement on all of the Service Parties.

///

///

///

Any objection to the Motion and the Debtor's continued use of cash collateral must be filed with the Court and served on counsel for the Debtor by no later than _____, 2026. Any reply by the Debtor to any such objection must be filed with the Court on served on counsel to the objecting party by _____, 2026.

IT IS SO ORDERED.

###

<table>
<tr><td>In re:<br><br>**RMA CA, INC.**<br><br>Debtor(s).</td><td>CHAPTER: **11**<br><br>CASE NUMBER: **2:26-bk-13916-VZ**</td></tr>
</table>

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**8280 Florence Avenue, Suite 200**
**Downey, CA 90240**

A true and correct copy of the foregoing document entitled (*specify*):   **DEBTOR'S EMERGENCY MOTION
FOR ENTRY OF AN INTERIM ORDER: (I) AUTHORIZING THE DEBTOR TO UTILIZE CASH
COLLATERAL PURSUANT TO 11 U.S.C. §§ 361, 362, 363; (II) GRANTING ADEQUATE
PROTECTION PURSUANT TO 11 U.S.C. §§ 361, 362, 363; (III) SCHEDULING A FINAL
HEARING PURSUANT TO BANKRUPTCY RULES 4001(b); AND (IV) GRANTING RELATED
RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** will be served or
was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR,
the foregoing document will be served by the court via NEF and hyperlink to the document. On   **4/30/2026**   , I checked the CM/ECF
docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice
List to receive NEF transmission at the email addresses stated below:

**Gregory Kent Jones (TR)**
**gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com;cpesis@stradlinglaw.com**

**Kelly L Morrison on behalf of U.S. Trustee United States Trustee (LA)**
**kelly.l.morrison@usdoj.gov**

**United States Trustee (LA)**
**ustpregion16.la.ecf@usdoj.gov**

**Thomas B Ure on behalf of Debtor RMA CA, INC.**
**tom@urelawfirm.com, urelawfirm@jubileebk.net;tom@ecf.courtdrive.com**

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On  **4/30/2026**   , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary
proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and
addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours
after the document is filed.

**United States Bankruptcy Court**
**Honorable Vincent P. Zurzolo**
**255 E. Temple Street, Suite 1368**
**Los Angeles, CA 90012**

☑ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each
person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by
personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission
and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be
completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 4/30/2026 | **Yolanda Segura** | /s/ Yolanda Segura |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June  2012*                                                                                                **9013-3.1.PROOF.SERVICE**

Label Matrix for local noticing
0973-2
Case 2:26-bk-13916-VZ
Central District of California
Los Angeles
Thu Apr 30 13:54:57 PDT 2026

Employment Development Dept
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

Franchise Tax Board
Bankruptcy Section MS: A-340
P.O. Box 2952
Sacramento, CA 95812-2952

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

(p)LOS ANGELES COUNTY TREASURER AND TAX COLLE
ATTN BANKRUPTCY UNIT
PO BOX 54110
LOS ANGELES CA 90054-0110

(p)OFFICE OF  FINANCE   CITY OF LOS ANGELES
200 N SPRING ST RM 101 CITY HALL
LOS ANGELES CA 90012-3224

RMA CA, INC.
536 W Milford Street, Ste 4
Glendale, CA 91203-3000

Securities & Exchange Commission
444 South Flower St., Suite 900
Los Angeles, CA 90071-2934

Los Angeles Division
255 East Temple Street,
Los Angeles, CA 90012-3332

Cadence Bank
1970 Satellite Blvd. NW
Duluth, GA 30097-4117

NorthStar Leasing Company
P.O. Box 4505
Burlington, VT 05406-4505

Parafin
301 Howard St., Ste 1800
San Francisco, CA 94105-6614

Rayan Aydinian
536 W Milford Street, Ste 4
Glendale, CA 91203-3000

(p)U S  SMALL BUSINESS ADMINISTRATION
312 N SPRING ST 5TH FLOOR
LOS ANGELES CA 90012-4701

Uncapped Ltd
607 S Clover Avenue #102
Los Angeles, CA 90031

United States Trustee (LA)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

Vahe Ghahramanians
c/o Sezgin Khousadian LLP
Attn: Arthur Sezgin, Esq.
500 North Central Avenue, Suite 830
Glendale, CA 91203-3587

Gregory Kent Jones (TR)
Stradling Yocca Carlson & Rauth
10100 N. Santa Monica Blvd., Suite 1400
Los Angeles, CA 90067-4140

Thomas B Ure
Ure Law Firm
8280 Florence Avenue
Suite 200
Downey, CA 90240-3963

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

L.A. County Tax Collector
Bankruptcy Unit
P.O. Box 54110
Los Angeles, CA 90051-0110

Los Angeles City Clerk
P.O. Box 53200
Los Angeles, CA 90053-0200

U.S. Small Business Administration
Office of General Counsel
312 North Spring Street, 5th Floor
Los Angeles, CA 90012

End of Label Matrix
Mailable recipients    18
Bypassed recipients     0
Total                  18